IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAPITOL RADIOLOGY, LLC                    :

                               :

     v.                    :   Civil Action No. DKC 09-1262

                               :

SANDY SPRING BANK                         :

                               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising from a defaulted business loan are: (1) Defendant's motion to strike Plaintiff's request for a jury trial (Paper 29); (2) Defendant's motion for summary judgment (Paper 48); (3) Defendant's motion to strike attachments to Plaintiff's response in opposition to Defendant's motion for summary judgment (Paper 62); and (4) Plaintiff's motion to dismiss the Equal Credit Opportunity Act claim without prejudice (Paper 63).[1]  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Plaintiff's motion to dismiss will be denied, Defendant's motion to strike attachments to Plaintiff's response will be granted in part and denied in part, Defendant's motion

_____

[1] Defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11 (paper 66) will be resolved in a separate memorandum once Plaintiff has been given an opportunity to respond.  Local Rule 105.8.6.

for summary judgment will be granted, and Defendant's motion to strike Plaintiff's jury request will be denied as moot.

I.   **Background**

This dispute arises from a loan and line of credit Plaintiff, Capitol Radiology, LLC, procured from Defendant, Sandy Spring Bank.  The line of credit was due and payable in full on May 31, 2006 and the loan was due and payable in full on September 2, 2008.  Defendant extended the due date on the line of credit several times, but issued a notice of default on both obligations in April 2008 after learning of a money judgment against Plaintiff in an unrelated case.

The following facts are undisputed unless otherwise noted. In January 2005, Dr. Doriann Thomas founded Plaintiff, Capitol Radiology, LLC, in Laurel, Maryland.   Shortly thereafter, Plaintiff hired an accounting firm to help secure a loan and line of credit.   In March 2005, Plaintiff accepted from Defendant a business loan of $225,000 and a line of credit in the maximum principal amount of $435,000.  These loans were secured by a priority interest in Plaintiff's assets and by certain of Thomas's personal assets, including her home.

Following the May 31, 2006 repayment date, Defendant extended Plaintiff's line of credit four times.  First, on November 1, 2006, the line of credit was continued to January 31, 2007.  Next, on March 31, 2007, the line of credit was

2

continued to April 30, 2007.  On April 30, 2007, the line of credit was continued for 60 days.  Finally, on October 22, 2007, following a meeting between Plaintiff's and Defendant's officers, the line of credit was continued to August 31, 2008. The revised agreement included in its list of acts constituting default both an "adverse change" in the borrower's finances and the lender's good faith belief in its own "insecurity." (Paper 2, Attach. 1, at 1).

In April 2008, Defendant learned of a judgment against Plaintiff in the Maryland case *Capital Medical Management Associates, LLC v. Capitol Radiology, LLC*, No. 273430-V (Cir. Ct. for Montgomery Cty., Md. Apr. 18, 2008).  The Maryland court had ordered Plaintiff to pay $55,396.83 in damages, $119,909.80 in attorneys' fees, and $4,442.53 in costs.  On April 28, 2008, Defendant issued a letter to Plaintiff demanding immediate repayment of all outstanding debts and listing as specific defaults the monetary judgment and a federal tax lien on Thomas's home in the amount of $28,165.  (Paper 2, Attach. 4, at 2).

According to Plaintiff's Chief Financial Officer, Larry McKenney, Plaintiff requested that Defendant's president meet with Thomas and McKenney to discuss the default.  (Paper 64, Amended Affidavit of Larry McKenney, at ¶ 4).  The parties met on May 12, 2008, but Defendant was represented by Roger Hanson,

a vice president and the loan officer who had handled Plaintiff's loans since their inception, accompanied by his team leader, Randy McVey.   McKenney avers that at the meeting he urged Hanson to reconsider the default, claiming that there were unresolved issues in the judgment, that on appeal the judgment of attorneys' fees would certainly be reversed, that the loans continued to be properly secured, and that even if the judgment were enforced in full, Plaintiff had sufficient funds to pay it immediately.   (*Id.* ¶ 5).   McKenney also states that he told Hanson that Thomas's accountant was working with the Internal Revenue Service to resolve the federal tax lien.   (*Id.* ¶ 4).

On July 31, 2008, Defendant seized Plaintiff's account ahead of enforcement of the Maryland judgment and informed Plaintiff that all monies received in the account would go to repayment of the loans.   In the letter notifying Plaintiff that Defendant was exercising its right of setoff, Defendant stated that the civil judgment and tax lien represented an "adverse change in the Borrower's financial condition and it is believed that the prospect of payment or performance of these notes [is] impaired."   (Paper 2, Attach. 6 at 2).   On August 8, 2008, Capital Medical Management Associates served on Defendant a writ of garnishment pertaining to Plaintiff's account.

Plaintiff filed a breach of contract suit against Defendant in the Circuit Court for Prince George's County Maryland on

August 19, 2008 (Paper 2, Attach. 2) and amended the complaint on May 14, 2009 to add a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691.   (Paper 18). Defendant thereupon removed the case to federal court. (Paper 1).

## II.  Plaintiff's Motion to Dismiss Without Prejudice

Plaintiff moves to dismiss the ECOA claim without prejudice.   (Paper 63).   Defendant resists the motion.   (Paper 67).   Plaintiff's motion to dismiss will be denied.

Plaintiff styles this motion as a motion to dismiss the Equal Credit Opportunity Act claim without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2).   Rule 41, however, only applies when a party seeks to dismiss an entire action, not merely one claim or count.  *Iraheta v. United of Omaha Life Ins. Co.,* 353 F.Supp.2d 592, 595 (D.Md. 2005), citing *Skinner v. First American Bank of Virginia,* 64 F.3d 659 (4th Cir. 1995)(unpublished)(in turn, citing *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988), *Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 517-18 (Fed.Cir. 1987); and 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 41.06-1, at 41-92 to -93 (1995)). Instead, Rule 15 governs.   The rules do, though, embody similar considerations, including that it is inappropriate to grant a plaintiff's request when summary judgment is imminent.

Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires."  Thus, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."  *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)(citing *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006).  Whether an amendment is prejudicial is at the sound discretion of the district court and is often dependent upon the amendment's nature and timing.  *Id.*  In particular, a court should consider the stage of the proceedings.  *See Skinner*, 64 F.3d at 659 (citing *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988)).

Here, Plaintiff seeks through amendment to dismiss a claim on the verge of summary judgment.  The claim has undergone substantial litigation, including completed discovery and numerous motions, responses, and replies.  Allowing Plaintiff to avoid judgment and preserve the claim would sufficiently prejudice Defendant that Plaintiff's motion to dismiss the ECOA claim without prejudice will be denied.  *See id.* (holding that leave to amend was not required where Plaintiff sought to remove a claim "after discovery had been completed and when the case was ripe for summary judgment").

## III. Defendant's Motion to Strike Papers Attached to Plaintiff's Response in Opposition to Summary Judgment

Before considering Defendant's motion for summary judgment, Defendant's motion to strike evidence Plaintiff attached to its response in opposition to summary judgment must be decided. (Paper 62).  Plaintiff resists the motion to strike.  (Paper 64).  The court will grant the motion in part and deny the motion in part.

Defendant argues that the court must strike four attachments to Plaintiff's response in opposition to summary judgment:  the McKenney Affidavit (Paper 55, Attach. 4), Plaintiff's answers to interrogatories, (*Id.*, Attach. 11), Plaintiff's answers to supplemental interrogatories (*Id.*, Attach. 10), and a spreadsheet projecting Plaintiff's losses due to its inability to purchase new equipment (*Id.*, Attach. 12). Each of these papers, Defendant claims, fails to meet the requirements under Rule 56(e) for evidence opposing a motion for summary judgment.

### A.   Standard of Review

"Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)(explaining Fed.R.Civ.P. 56(e)).  The affidavit must be

limited to facts based on personal knowledge and not present ultimate facts or conclusions of law. *Id.* Statements made on "information and belief" are insufficient to establish a material fact. *See Automatic Radio Mfg. Co. v. Hazeltine Res., Inc.*, 339 U.S. 827, 831 (1950)(overruled on other grounds, *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969)); *Ambling Mgmt. Co. v. Univ. View Partners, LLC,* 581 F.Supp.2d 706, 720 (D.Md. 2008).

At the court's discretion, an affidavit in opposition to summary judgment may be supplemented by depositions, answers to interrogatories, or additional affidavits. Fed.R.Civ.P. 56(e)(1). Where a paper is referred to in an affidavit, a sworn or certified copy of the paper must be attached to the affidavit. *Id.* Where only portions of an affidavit or paper are inadmissible, the court will consider the rest of the document. *See Evans*, 80 F.3d at 962.

**B.   The McKenney Affidavit**

Defendant argues that the McKenney affidavit is defective in three ways: it is sworn on information and belief instead of personal knowledge, it contains impermissible expert opinion testimony on the state court judgment, and part of it conflicts with prior deposition testimony. In response, Plaintiff argues that the McKenney affidavit was based on personal knowledge and submits a revised affidavit, cured of defects by being properly

sworn and not including the conflicting information.  In effect, the motion to strike the original affidavit is moot.

The revised affidavit presents internal evidence that McKenney had personal knowledge of the facts as it recounts facts about McKenney himself, financial facts about the organization for which he is the Chief Financial Officer, and facts about meetings McKenney personally attended.  Thus, this defect was cured in the revised affidavit by the statement in paragraph 1: "I am over the age of 18 and am competent to testify to the following from first hand knowledge." (Paper 64, Attach. 2, ¶ 1).

The revised affidavit cures a second defect by removing the conflicting information.  An issue of material fact cannot be established solely by conflicting versions of testimony.  *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990).  In the initial affidavit, McKenney stated that he told Defendant that Plaintiff had sufficient funds in a Bank of America savings account to satisfy the judgment against Plaintiff. (Paper 55, Attach. 4, ¶ 5).  This conflicted with an earlier statement he made in a deposition that he had not told Defendant about the Bank of America account. (Paper 48, Attach. 9, 180:22-181:8).  In the revised affidavit, McKenney avers only that he told Defendant that Plaintiff had sufficient assets to "simply write a check" to satisfy the judgment. (Paper 64,

Attach. 2, ¶ 5).   The McKenney affidavit no longer contradicts the deposition.

Finally, the conclusory statements in the affidavit will only be considered for their effect on the hearers, not for their truth, and thus are proper under Rule 56(e).   Therefore, the revised affidavit meets Rule 56's evidentiary requirements, and may be relied on in considering the motion for summary judgment.

**C.   The Answers to Interrogatories**

The answers to interrogatories attached to Plaintiff's response in opposition to summary judgment will be stricken. Defendant argues that these responses must be stricken because they are based on information and belief instead of personal knowledge.   Plaintiff responds that they may properly be considered as lay witness opinions.   Although answers to interrogatories may be considered on motions for summary judgment, they must conform to the requirements of Rule 56.   *See* *Solis v. Prince George's County*, 153 F.Supp.2d 793, 799 (D.Md. 2000).   Here, the answers are sworn "to the best of my knowledge, information, and belief."   (Paper 55, Attach. 10, at 11; Paper 55, Attach. 11, at 13).   The answers therefore do not meet evidentiary requirements, and they will not be relied upon in considering the motion for summary judgment.

### D.    The Financial Loss Spreadsheet

The court will strike the financial loss spreadsheet attached to Plaintiff's response in opposition to summary judgment.  Defendant argues that the financial loss spreadsheet (Paper 55, Attach. 12) must be stricken because it is an unauthenticated document that purports to be an expert opinion. Plaintiff responds that the spreadsheet is a lay opinion based on personal knowledge.  Regardless of whether the opinion is lay or expert, it must be sworn before it can be properly considered at summary judgment.  *See Solis*, 153 F.Supp.2d at 799. Therefore, the spreadsheet does not meet evidentiary requirements, and it will not be relied upon in considering the motion for summary judgment.

## IV.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on both the breach of contract and the ECOA claims.  (Paper 48).  Plaintiff responds that genuine issues of material fact remain on the breach of contract claim (Paper 55) and moves to dismiss without prejudice the ECOA claim (Paper 63).  Summary Judgment will be granted in favor of Defendant on both claims.

### A.    Standard of Review

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  It is well established that a motion for summary judgment will be granted only if there exists

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297.  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex Corp.*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id*.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324.  "A mere scintilla of proof, however,

will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**B.   The Equal Credit Opportunity Act Claim**

An ECOA violation may be established either by evidence of statements showing a discriminatory intent or by evidence of disparate treatment. *See Faulkner v. Glickman*, 172 F.Supp.2d 732, 737 (D.Md. 2001). Defendant argues that Plaintiff cannot produce either type of evidence. Plaintiff admits that it does not possess the evidence to prove its claim and moves the court to dismiss the ECOA claim without prejudice. (Paper 63, at 2). Both parties are correct that there is insufficient evidence to prove an ECOA violation. Voluntary dismissal is inappropriate at this stage of the proceedings. (See section II above). Because Plaintiff admits that it cannot prove its ECOA case against Defendant with its current evidence, the Defendant's motion for summary judgment on this claim will be granted.

**C.   The Breach of Contract Claim**

Defendant also moves for summary judgment on Plaintiff's breach of contract claim. (Paper 48). Defendant argues that

the judgment against Plaintiff, the federal tax lien against the loan guarantor's home, and Plaintiff's history of failure to meet its obligations under the loan agreements constituted sufficient cause for Defendant to hold the loans in default. Because the contract states in unambiguous terms that the loans could be held in default upon an adverse change in the borrower's financial health or when the lender in good faith believes itself insecure, Defendant validly held Plaintiff in default. Defendant additionally asserts that Plaintiff's persistent delays in supplying requested financial information, its failure to inform Defendant of several lawsuits, its deliberate hiding of assets, and its general financial behavior all constituted other actual or potential events of default under the loan documents.

Plaintiff resists Defendant's motion. (Paper 55). Plaintiff argues that by holding the loan in default Defendant breached its implied duty of good faith under the contract. Because McKenney had explained that the judgment and tax lien did not diminish Plaintiff's financial strength at the May 12, 2008 meeting, Defendant's decision to call the loan in default was unreasonable. Plaintiff further argues that Defendant's alternative grounds for default must be disregarded because they were not identified at the time Defendant seized Plaintiff's assets.

To succeed in a breach of contract claim, a plaintiff must prove: (1) that it had a valid contract with the defendant; and (2) that the defendant failed to satisfy its contractual obligations. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). The plaintiff is not required to prove damages, as nominal damages are available where the plaintiff cannot prove actual damages. *Id.* Here, Plaintiff has shown the existence of its contract with Defendant but has not presented evidence supporting its allegation that Defendant violated the contract.

The language of the loan agreement gives Defendant the right unilaterally to declare Plaintiff in default. Under Maryland's objective theory of contract interpretation, unambiguous contract terms are given their plain meaning, regardless of the parties' intentions at the time the contract was formed. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008). Here, the terms of the loan agreement are not ambiguous, and Plaintiff does not argue otherwise in its response. The loan agreement contains a number of different circumstances in which Defendant may declare Plaintiff in default, including "adverse change" and "insecurity":

**Adverse Change.**   A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.**   Lender in good faith believes itself insecure.

(Paper 2, Attach. 1, at 1).

The judgment against Plaintiff was for a significant amount.   When Defendant further investigated Plaintiff's assets, it discovered a lien against the loan guarantor's home.   These events are sufficient to support Defendant's good faith belief that its assets were insecure.   No issue of material fact is raised in Plaintiff's argument that this belief was unreasonable because McKenney told Defendant that Plaintiff was financially healthy.[2]

Because the language of the contract allowed Defendant to call Plaintiff in default in the event of Defendant's good faith belief that it was insecure, there were events sufficient to trigger that clause, and there is no evidence that Defendant acted in bad faith, Defendant's motion for summary judgment on the breach of contract claim will be granted.

---

[2] Even if this conversation could have given notice that Defendant could not reasonably feel insecure, the conversation took place *after* Defendant had called the loan in default consistent with the terms of the loan agreement.

16

**V.   Defendant's Motion to Strike Plaintiff's Request for a Jury Trial**

The court will enter judgment in favor of Defendant, so Defendant's motion to strike Plaintiff's request for a jury trial will be denied as moot.

**VI.   Conclusion**

For the foregoing reasons, Plaintiff's motion to dismiss will be denied, Defendant's motion to strike attachments to Plaintiff's response in opposition to summary judgment will be granted in part and denied in part, Defendant's motion for summary judgment will be granted, and Defendant's motion to strike plaintiff's jury request will be denied as moot. Plaintiff will be directed to respond to Defendant's motion for sanctions.

```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```